# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **BARBARA DAVIS, ET AL.** | * | **CIVIL ACTION NO. 07-01369** |
| **VERSUS** | * | **JUDGE JAMES** |
| **BIO-MEDICAL APPLICATIONS OF LOUISIANA LLC, ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are cross-motions for summary judgement filed by defendant Bio-Medical Applications of Louisiana LLC ("Bio-Medical"), (Doc. #11), and plaintiffs Johnny Benton, Barbara Davis, and Dorothy Randle. (Doc. #16). Also pending is an unopposed motion to strike exhibits, (Doc. #21), filed by defendant Bio-Medical. For reasons to follow, it is **RECOMMENDED** that the defendant's motion for summary judgment, (Doc. #11), be **GRANTED**, and that the plaintiff's motion for summary judgment, (Doc. #16), be **DENIED**. In addition, it is **ORDERED** that the defendant's motion to strike be **GRANTED in part**, as described below.

## BACKGROUND

The plaintiffs' lawsuit, filed in July 2007, arises from the care Lillie Benton received from Bio-Medical. Benton received dialysis treatment at Bio-Medical from 2001 until January 5, 2004. (Doc. #11-1, ¶ 1). On January 6, 2004, Benton was admitted to North Monroe Medical Center. Benton died at North Monroe Medical Center on January 22, 2004. (Doc. #11-1, ¶ 2). The plaintiffs contend that Bio-Medical provided substandard care by, *inter alia*, reusing filters used on its dialysis machines, not cleaning and/or sterilizing its devices and equipment, and not taking immediate steps to hospitalize Benton after she exhibited chills and other symptoms. *See*

(Docs. #18, p.4; #18-10, ¶ 1). The plaintiffs assert that Benton's death and/or pain and suffering are attributable to the defendant's negligence. (Doc. #1-1, ¶ 5).

## LAW AND ANALYSIS

I. **Federal Procedural Law**

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, the parties agree that Louisiana law applies. *See generally In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1231 (2008) and 128 S. Ct. 1230 (2008) (deferring to the parties' agreement that Louisiana substantive law controlled).

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting Anderson*, 477 U.S. at 247). "[I]f the

movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## II.     State Substantive Law and Analysis

To establish a claim for medical malpractice, a plaintiff must prove by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the

3

resulting injury. LA. REV. STAT. ANN. § 9:2794. Thus, malpractice claims against a hospital and its doctors "are subject to the general rules of proof applicable to any negligence action." *Henderson v. Homer Mem'l Hosp.*, 920 So. 2d 988, 994 (La. Ct. App. 2006), *cert denied*, 927 So. 2d 316 (La. 2006).

In a medical malpractice claim, an expert witness is generally necessary as a matter of law. *Boudreaux v. Mid-Continent Cas. Co.*, 950 So.2d 839, 844 (La. Ct. App. 2006), *cert denied*, 948 So. 2d 171 (La. 2007). In particular, medical expert opinions are usually necessary to establish the standard of care and to determine whether the defendant breached that standard. *Martin v. East Jefferson Gen. Hosp.*, 582 So. 2d 1272, 1277 (La. 1991); *See Samaha v. Rau*, 977 So. 2d 880, 884 (La. 2008). "Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence." *Pfiffner v. Correa*, 643 So. 2d 1228, 1233 (La. 1994). "Moreover, the jurisprudence has held that this requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care." *Boudreaux*, 950 So. 2d at 844.

### A. The Defendant Met Its Burden Under the Summary Judgement Standard

Here, the defendant has supported its motion with expert opinion evidence establishing both that its treatment of Lillie Benton met the applicable standard of care and that the quality of care did not cause her death. The defendant has introduced into evidence the declarations of Michael Davis and Susan Cary. (Doc. #11, Ex. C - D). Davis is a medical doctor who is board

4

certified in internal medicine and nephrology. Cary is a licensed registered nurse and nurse practitioner. She is also a certified nephrology nurse. Davis, having reviewed the relevant medical records and pleadings, asserts that he believes the defendant's actions did not breach the required standard of care and did not cause Benton's death. Cary concurs with the conclusion that the defendant did not breach the required standard of care in providing treatment to Benton.

In addition, the defendant has pointed to the lack of evidence submitted by the plaintiffs. In particular, the defendant asserts that the plaintiffs have submitted no evidence, including no expert testimony, tending to prove the essential elements of substandard care and causation. Hence, the defendant has met its responsibility of indicating the portions of the record that establish an absence of a genuine issue of material fact and entitle the defendant to judgment as a matter of law.

    **B.**    **The Plaintiffs Have Submitted No Evidence Establishing Several Essential Elements of Their Claims**

From the evidence in the record, a reasonable person could not determine (1) what the defendant's required standard of care was; (2) whether the defendant met the standard; and (3) whether a failure to meet the standard of care caused Benton's death. The plaintiffs allege that the defendant reused dialysis machine filters and failed to clean or sterilize medical devices and equipment. In addition, the plaintiffs contend that "no steps were taken . . . to address or treat the onset of a blood borne infection in Lillie Benton." (Doc. #16). In this regard, the plaintiffs submit that "[i]t is undisputed that the defendant did not take immediate steps to seek hospitalization of Lillie Benton upon exhibiting chills and other symptoms." (Doc. #18, p.4).

In support, the plaintiffs have submitted only the following: (1) affidavits by Barbara

5

Davis and Johnny Benton; and (2) records from the North Monroe Medical Center. To the extent that the plaintiffs argue that the affidavits of Davis and Benton constitute expert testimony, the argument is rejected. First, under this court's November 26, 2007, scheduling order, the deadline for identifying experts was April 25, 2008, and the deadline for delivering expert reports was May 6, 2008. (Doc. #10). The plaintiffs did not identify any expert witnesses or delivery any expert witnesses in time for those deadlines. Second, in neither affidavit do the affiants claim to be experts. While Johnny Benton is a Certified Nursing Assistant, (Doc. #17, Ex. F), and Davis is a Louisiana Practical Nurse, (Doc. #17, Ex. E), neither has expertise in dialysis treatment or any of Lillian Benton's ailments.

Consequently, the plaintiffs have provided no expert testimony establishing a failure to exercise reasonable care and diligence and have similarly failed to submit expert testimony establishing causation. Moreover, the allegations are not of the type from which a layperson can infer negligence. A layperson cannot be expected to know the proper standard for maintaining dialysis equipment. Nor is a layperson expected to know which symptoms require immediate hospitalization. None of the alleged actions by the defendant can be described as "so egregious that malpractice would be obvious to a lay person." *See Samaha*, 977 So. 2d at 884.

However, even assuming a layperson could infer negligence from the alleged actions, the granting of summary judgment in the defendant's favor would still be appropriate. Just as the plaintiffs have submitted no expert testimony regarding the proper standard of care, they have submitted no expert testimony establishing causation. Laypersons are not capable of determining whether the actions described above caused Benton's death or pain and suffering.

In addition, portions of the affidavits must be stricken because they are irrelevant or not

based on personal knowledge. "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). With regard to Benton's affidavit, paragraphs 9, 10, and 11 must be stricken. Notwithstanding his conclusory assertions to the contrary, his affidavit does not demonstrate that Benton has personal knowledge of Lillie Benton's conditions and prescribed treatments. With regard to Davis's affidavit, paragraphs 9, 10, 11, 12, and 13 must be stricken. Davis, like Benton, fails to demonstrate personal knowledge of the treatments, diagnoses, and conditions of Benton. Moreover, several of the assertions are based on statements made by third-parties or on the contents of medical reports. As a result, it is ordered that those paragraphs be stricken. However, even if the paragraphs were not stricken, the plaintiffs' evidence would be inadequate to establish duty, breach, or causation, all of which are essential elements of their case.

## CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that the defendant's motion for summary judgment, (Doc. #11), be **GRANTED**, and that the plaintiff's motion for summary judgment, (Doc. #16), be **DENIED**. In addition, it is **ORDERED** that the defendant's motion to strike **is GRANTED in part** by striking paragraphs 9, 10, and 11 from Johnny Benton's affidavit, (Docs. #17, Ex. F; #18, Ex. F), and paragraphs 9, 10, 11, 12, and 13 of Barbara Davis's affidavit. (Docs. #17, Ex. E; #18, Ex. E).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten**

7

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

**THUS DONE AND SIGNED** this 22nd day of August, 2008, in Monroe, Louisiana.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE