United States Court of Appeals
Fifth Circuit

**F I L E D**
June 22, 2009

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

RECEIVED
JUL 20 2009
TONY R. MOORE, CLERK
BY_____
    DEPUTY

No. 08-31034
Summary Calendar

D.C. Docket No. 3:07-CV-1369

BARBARA DAVIS; DOROTHY RANDLE; JOHNNY BENTON

    Plaintiffs - Appellants

v.

BIO-MEDICAL APPLICATIONS OF LOUISIANA LLC, doing business as Bio-Medical Applications Bastrop

    Defendant - Appellee

Appeal from the United States District Court for the
Western District of Louisiana, Monroe

Before WIENER, STEWART, and CLEMENT, Circuit Judges.

## J U D G M E N T

    This cause was considered on the record on appeal and the briefs on file.

    It is ordered and adjudged that the judgment of the District Court is affirmed.

    IT IS FURTHER ORDERED that plaintiffs-appellants pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: JUL 14 2009

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
      Deputy

New Orleans, Louisiana

RECEIVED
JUL 2 0 2009
TONY R. MOORE, CLERK
BY _____ DEPUTY

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-31034
Summary Calendar

---

BARBARA DAVIS; DOROTHY RANDLE; JOHNNY BENTON

                Plaintiffs - Appellants

v.

BIO-MEDICAL APPLICATIONS OF LOUISIANA LLC, doing business as Bio-Medical Applications Bastrop

                Defendant - Appellee

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:07-CV-1369

---

Before WIENER, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    This suit concerns claims brought by three adult children of Lillie Benton ("Benton")—Barbara Davis, Dorothy Randle, and Johnny Benton (collectively, the "Plaintiffs")—against Bio-Medical Applications of Louisiana, LLC ("BMA") for malpractice, negligence, and breach of contract in BMA's dialysis treatment

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-31034

of Benton. In short, the Plaintiffs aver that BMA provided substandard care to Benton, causing her illness and death. On cross-motions for summary judgment, the district court granted summary judgment in favor of BMA. Because we hold that the Plaintiffs failed to offer legally sufficient evidence that BMA committed acts of medical malpractice that caused Benton's illness and death, we affirm.

## FACTS AND PROCEEDINGS

Benton received periodic dialysis treatment from BMA beginning in 2001. On the morning of January 5, 2004, Benton received dialysis treatment at BMA. Because she had a temperature of 100.2 degrees, she was monitored for related complications by the treating nurse and remotely monitored by the nephrologist on call. Benton was treated and discharged in stable condition.

Although there is no evidence that Benton was ill immediately following her treatment at BMA, she began to suffer from confusion later that night. She was admitted to the hospital on January 6, 2004 with a temperature of 101.0. The admitting physician's impression was "[f]ever with altered mental status, strongly suggestive of sepsis syndrome, either from Tesio catheter infection or urinary tract infection with secondary bacteremia" and "[h]ypoxemia, probably due to sepsis with mild $CO_2$ retention," but the physician's notes also mentioned "[h]ypertension," "[c]hronic atrial fibrillation," [d]iet controlled diabetes," and "[e]nd stage renal disease." The physician also noted that Benton had a "history of infected catheter and has been treated in the past but at that time she was not confused." Although her confusion cleared with antibiotic treatment, she had an "abrupt mental status change" a few days later. A CT scan revealed a "massive intracerebral hemorrhage." Benton died on January 22, 2004. She was 87 years old. The stated cause of death was a "[c]erebrovascular accident."

2

No. 08-31034

The Plaintiffs filed suit in July 2007, alleging that BMA provided Benton sub-standard care that caused her illness and death. They rely upon the medical information described above, as well as their own affidavits—one by Barbara Davis, who is a Louisiana Practical Nurse, and one by Johnny Benton, who is a Certified Nursing Assistant—claiming that BMA reused filters on its machines, did not sufficiently clean its equipment, and did not take steps to hospitalize Benton. Notwithstanding their credentials, neither Barbara Davis nor Johnny Benton was offered as an expert nor did the Plaintiffs offer any other experts or expert reports. In response to the Plaintiffs' claims, BMA offered two expert declarations—by Michael Davis, M.D., a board certified nephrologist, and Susan Cary, a certified nephrology nurse—concluding that BMA did not deviate from the required standard of care in its treatment of Benton and that her death was not caused by substandard medical treatment. Cary also opined that "[i]nfection is a known risk for dialysis patients, particularly those with catheters, and does not, in and of itself, indicate improper medical care."

The Plaintiffs and BMA filed cross-motions for summary judgment. On August 22, 2008, the designated magistrate judge recommended that BMA's motion be granted. The judge also recommended that certain paragraphs from the Plaintiffs' affidavits concerning Benton's medical conditions and prescribed treatments be stricken for lack of personal knowledge. On October 1, 2008, the district court issued an order accepting the magistrate judge's recommendation and awarding summary judgment to BMA.

The magistrate judge rejected the Plaintiffs' claims because they "provided no expert testimony establishing a failure to exercise reasonable care and diligence [or] . . . establishing causation." The judge cited the general Louisiana

3

No. 08-31034

rule that expert testimony is required in medical malpractice suits, *see Samaha v. Rau*, 977 So. 2d 880, 884 (La. 2008), and rejected the argument that the claims fit that rule's narrow exception for acts "so egregious that malpractice would be obvious to a lay person," *id*. The magistrate judge concluded that a "layperson cannot be expected to know the proper standard for maintaining dialysis equipment" or "which symptoms require immediate hospitalization." The judge further opined that even if a layperson could infer negligence, the claims still fail because the Plaintiffs offer "no expert testimony establishing causation." The judge observed, "[l]aypersons are not capable of determining whether the actions [taken by BMA] caused Benton's death or pain and suffering."

The Plaintiffs filed a notice of appeal on October 21, 2008.

## STANDARD OF REVIEW

This court reviews grants of summary judgment *de novo*. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

## DISCUSSION

To recover on a claim of medical malpractice, Louisiana law requires that a plaintiff prove each of the following: (1) the applicable standard of care, (2) that the defendant breached the standard of care, and (3) that the defendant's breach caused the plaintiff's injury. *See* LA. REV. STAT. ANN. § 9:2794. Given the factual

4

No. 08-31034

complexity of malpractice cases, "[e]xpert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence . . . ." *Samaha*, 977 So. 2d at 884. Expert testimony on causation is similarly required "in circumstances involving a complex medical condition" where causation is not "evident." *Pfiffner v. Correa*, 643 So. 2d 1228, 1234 (La. 1994). Further, the need for expert testimony from a plaintiff "is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care." *Boudreaux v. Mid-Continent Cas. Co.*, 950 So. 2d 839, 844 (La. Ct. App. 2006), *cert. denied*, 948 So. 2d 171 (La. 2007).

We agree with the magistrate judge that the present case, which involved an 87-year old patient with multiple health conditions who seemingly suffered from an infection that was common to her and a known risk of dialysis and may even have died from an unrelated stroke, does not lend itself to lay assessment. This case is a far cry from the examples of "fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body" listed by the Louisiana Supreme Court as arguably permitting lay inferences of negligence. *Pfiffner*, 643 So. 2d at 1233. Indeed, there are many non-negligent reasons why an infection—if that is what occurred—could have arisen from Benton's treatment. As for causation, her illness and death from a "cerebrovascular accident" does not meet the limited exception for lay assessment of "evident" causes described by the Louisiana Supreme Court as including such things as "amputation of the wrong leg." *Id.* at 1234. In short, the lack of expert testimony dooms the Plaintiffs' case.

No. 08-31034

The Plaintiffs offer two responses to the foregoing, neither of which have merit. First, they argue that Barbara Davis and Johnny Benton are experts for evidentiary purposes. However, these two individuals were not designated as experts, they have offered no expert reports, and they do not have particular expertise on their mother's condition or treatment. Second, the Plaintiffs argue that their claims are not limited to malpractice, but include "regular" negligence and breach of contract. All of the claims, however, arise from allegedly negligent "health care . . . services [which were] rendered, or which should have been rendered, by a health care provider, to a patient," as defined by the applicable malpractice statute, the Medical Malpractice Act ("MMA"). LA. REV. STAT. ANN. § 40:1299.41A(13). The Louisiana Supreme Court employs a six-part test for assessing whether or not a claim is for "malpractice" under the MMA, namely whether the wrong: (1) was "treatment related," (2) required expert evidence to decide whether the applicable standard of care was breached, (3) involved assessing the patient's condition, (4) occurred within the scope of activities for which the medical facility is licensed, (5) would not have occurred but for the treatment being sought, and (6) was unintentional. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 888 So. 2d 782, 786–87 (La. 2004). The Plaintiffs' claims for improper provision of dialysis services meet each of the foregoing criteria.

In sum, the Plaintiffs have failed to offer the evidence necessary to support their claims that BMA committed acts of medical malpractice that caused Benton's illness and death.

## CONCLUSION

For the reasons described above, we AFFIRM the district court's grant of summary judgment to BMA.

6

**RECEIVED**

JUL 2 0 2009

TONY R. MOORE, CLERK
BY_____
       DEPUTY

*United States Court of Appeals*
FIFTH CIRCUIT
OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

July 14, 2009

Mr. Tony R. Moore
Western District of Louisiana, Monroe
John M. Shaw U. S. Courthouse
800 Lafayette Street
Suite 2100
Lafayette, LA 70501

    No. 08-31034, Davis, et al v. Bio-Med Applications
       USDC No. 3:07-CV-1369

Enclosed, for the Western District of Louisiana, Monroe only, is a copy of the judgment issued as the mandate.

Enclosed, for the Western District of Louisiana, Monroe only, is a copy of the court's opinion.

The electronic copy of the record has been recycled.

                              CHARLES R. FULBRUGE III, Clerk

                              By:_____
                              Nancy F. Dolly, Deputy Clerk
                              504-310-7683

cc: (letter only)
    Honorable Robert G. James
    Mr. Leo Douglas Lawrence
    Mr. Erick Yukihiko Miyagi

P.S. to Judge James: A copy of the opinion was sent to your office via email the day it was filed.

*Mandate Issued - MDT-1 (!ag,tax,img)*